LUDINGTON CIGARETTE MACH. CO., Inc., v. ANARGYROS et al.

(Circuit Court of Appeals, Second Circuit.  June 26, 1911.)

No. 284.

PATENTS (§ 328*)—VALIDITY AND INFRINGEMENT—MACHINE AND PROCESS FOR MAKING CIGARETTES.

The Ludington patents, No. 711,986 for a machine, and No. 711,987 for a process, for making cigarettes from continuous cigarette rods, were not anticipated, and disclose patentable invention. Claim 1 of the machine patent and claim 3 of the process patent *held* infringed by the machine and process of the Lawless patents, Nos. 779,430 and 779,431.

Appeal from the Circuit Court of the United States for the Southern District of New York.

Suit in equity by the Ludington Cigarette Machine Company, Incorporated, against S. Anargyros and the American Tobacco Company. Decree for complainant, and defendants appeal. Modified and affirmed.

Following is the opinion of the Circuit Court by Hazel, District Judge:

The complainant is the owner by assignment of patents numbered 711,986 and 711,987, both dated October 28, 1902, and issued to Frank J. Ludington, inventor. The defendants, S. Anargyros and the American Tobacco Company, the former, as alleged in the bill, being under the control of the latter, are jointly charged with conjoint infringement of said patents, which respectively relate to the machinery and the process of making cigarettes of oval shape from so-called continuous cigarette rods. To make cigarettes automatically by continuous filler machines, in which machines the tobacco is drawn through a smoother by an endless tape, upon which the filler rests, was an old art at the date of the invention in suit, and the patentee does not claim to be a pioneer in this field of invention. Indeed, he himself, as had others before him, had invented and previously secured patents for cigarette machines of this type. Originally, in cigarette machines the cigarette rod was made from ribbon paper as it unrolled from a spool; one edge of the paper passing over a paste wheel and traveling along into a trough, from whence it was gradually drawn into a tube corresponding to the curvature of the trough, and there formed into a filler. The edges of the wrapping paper, having curved upward in its movements, were brought together and pasted, and the filler upon leaving the trough was cut into cigarettes. Bonsack Machine Co. v. Elliott, 69 Fed. 335, 16 C. C. A. 250. The earlier machines were not commercially successful, for the reason that the wrapping paper was drawn through the trough and tubular metal by a nipper device, and was strained and torn through frictional contact. Afterwards, in 1879, a patent was issued to Emery (No. 216,164) which was designed to overcome the difficulties in the pioneer invention. In his machine the tobacco after leaving the feed-

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

ing device was formed into a filler rod, and smoothed and pressed by concave wheels and rollers, and the edges of the wrapper were pasted; the paste being applied by suitable apparatus. The instrumentalities for making the filler rod were contained at one part of the machine, and by a separate device it was laid upon the wrapping paper at another part thereof. After the cigarette rod was formed, the filler rod belt passed under the table, and reappeared, to act as a carrier of the filler after the wrapping paper was wound around it. As the wrapping paper gradually enveloped the rod in its movements through the metallic tube, corresponding in diameter to the thickness of the filler rod, it was pasted and pressed to form the cigarette. Other patents to Emery and other patentees were subsequently granted for improvements, and at the date of the patents in suit cigarettes having broad seams and a round shape were made automatically by machines in large quantities. The Bonsack machine was a marked improvement of the Emery patent for making round cigarettes, as distinguished from flattened or oval-shaped cigarettes. In the year 1900 Turkish cigarettes of oval shape came into extensive use. In this class of cigarettes the corners and seams were narrow, the paper wrappers were finely finished, the fillers smooth and regular, and, as they were made by hand, they obtained a reputation for superiority of style and workmanship. None of the continuous cigarette making machines known to the art were adapted to successfully make the Turkish cigarette of approved symmetry. There were in existence, it is true, machines which made cigarettes in imitation of Turkish handmade cigarettes, but the patentee claims that such machines were defective, and did not embody his central idea of a smoother combined with the folders and heating cap. In the Ludington, as in prior machines, the tobacco is shredded, and runs from a hopper to a feeding device by means of pulleys and belts, and then onto a traveling surface, where the filler is formed, and the underlying wrapping paper is wound around the filler as it travels on a feed guide. In the Ludington machine the filler is continuously drawn through a smoothing device of trough shape by an endless tape, and in its progress the filler and wrapper encounters a folder, which turns up one edge of the paper over the tape of the filler, and paste is immediately applied by a paste wheel to the other edge, and thereupon both edges are brought to adhere by a second folder, and the seam is pressed down tight by the tube part of the metal channel as the filler moves onward in its path. The upper part of the channel, which is constructed in one piece, has an extension, which forms the heating cap. The novelty of the invention is claimed to reside in the application of the smoother to the filler and pressure of a curved heated metal part directly upon the pasted seam, which has the double function of simultaneously drying and smoothing it before it reaches the knife for cutting into proper size. The patentee dispensed with the familiar concave wheels and rollers which were used to smooth and press the filler, and substituted conspicuously new instrumentalities, i. e., a smoothing device in combination with folders and a heating cap, positioned in the path of the filler, for heating the open seam of the cigarette rod. To impart the desired effect of the heater directly on the seam, it was necessary to expose the seam, and this was accomplished by the action of the tape, which, owing to the expansion of the filler, drops back, leaving the seam open for ironing. The specification, speaking of objections and defects in prior machines that prevented giving the filler the desired symmetry, says: "In the machines referred to in making Turkish cigarettes with narrow lap it has been found that the mechanical pasting of the seam wrinkled the paper along the line of the seam, and the filler, not having been smoothed before wrapping, left indentations or pits on the surface of the finished cigarette, and that such wrinkled seam and indented or pitted surface plainly betrayed the machine make of the article. To produce such a seam of absolutely perfect character, I provide in the present invention a heated ironing device, which presses upon the seam for a considerable length of time after it is pasted, and operates to simultaneously dry and smooth the seam, and to remove all wrinkles in the surface of the wrapper." The said objection was attributed by the patentee to the concave wheels, between which the tobacco moved too rapidly, and which interfered with properly or permanently compressing it, together with the failure of such prior machines to properly smooth and dry the filler after

the edges of the wrapper were pasted together. The evidence supports the claim of the indicated inefficiencies of the prior machines for manufacturing Turkish cigarettes. The improvement in suit, which came into the market in 1902, was generally approved by the trade, and recognized as satisfactorily fulfilling the requirements and overcoming the objections and defects hereinbefore mentioned. The claims alleged to be infringed in patent No. 711,986 are 1, 2, 3, 12, 13, 18, 19, 21, and 22. Claim 1 reads as follows: "(1) In a continuous cigarette machine, the combination, with means for forming and propelling a continuous cigarette with seamed paper wrapper, of a trough-shaped guide to support the cigarette, a cap arranged and operated to press upon the seam of the wrapper, and means for heating the cap to smooth and iron the seam, substantially as herein set forth." Claim 1 broadly includes the means for forming and propelling a cigarette with seamed paper wrapper. Such claim, however, cannot be given its literal import, and must be narrowed to include the specific combination. Claim 2 is limited to forming an oval cigarette in machines of the style in controversy. Claim 3 is for a combination with means for feeding the tobacco to the wrapper. Claim 12 emphasizes the "endless tape adapted to carry a paper wrapper." Claim 13 details the means for heating the heater cap. Claim 18 specifies the smoother, f, for equalizing the tobacco and the feature of the first folder. Claim 19 specifies the heater cap attached removably to the guide and heating means. Claims 21 and 22 cover the combination of the smoothing tongue with the folding surfaces and the guides arranged to permit the tobacco to expand as it passes from one to another.

The defendants, to anticipate the claims, or, at least, to limit them, contend that the feature of simultaneous heating and pressure is found in the prior art. None of the prior patents, however, embody the central idea of complainant's invention. Means for drying a continuous cigarette and imparting to it a finish, it is true, is suggested in the Emery patent, No. 216,164, but it certainly does not disclose how a heated iron may be directly applied on a moist seam to smooth and iron it. Bonsack, who improved the Emery machine, as a result of which it achieved commercial success, was apparently unaware of its heating jacket mentioned in the specification, for he never used it to perform simultaneous heating and smoothing. The Emery patent does not describe the jacket, nor how it was heated, and if in this respect it was of any practical use the evidence does not show it. Nor is the Chappell patent, No. 542,974, entitled to material weight, for in the structure therein described the tube inclosing the heating jacket was designed to dry the cigarette after pasting the seam. His drier had no pressing or smoothing action, and therefore does not anticipate the patent of complainant. There was much evidence given on both sides in relation to the Chappell patent; it being claimed by the defendants that the diameter of the drier was such as to impart to the cigarette while being dried a smoothing action. The drawing of the drier accompanying the specification, however, in connection with Mr. Dorsey's testimony, shows that the patentee never contemplated that his drier would also act as a smoothing or pressing device, and, aside from this, I do not think there was a disclosure in said patent of the heating means in suit or as constructed that it was capable of drying and pressing the seam by simultaneous application of the tube or channel. The Ludington appliance patent possesses merit, and the application of the doctrine of a fair range of equivalents is thought justified. Again it is claimed that the essence of the invention simply consisted in dispensing with the wheels and rollers for pressing the tobacco filler. There is a wide difference of opinion between counsel as to the construction of the claims and as to the manner in which the defendants' machines operate. As the specification and claims emphasize the means by which the oval form of the cigarette is attained—i. e., the concave smoother, the expansion of the tobacco as it travels to the heating cap, the exposure of the seam for ironing, drying, etc.—the patent is entitled, I think, to a broader construction than contended by defendants. It certainly is not limited to the substituted means of a feed and barrel guide, and it was shown that the invention was entitled to cover machines which retain rotary agencies for compressing the tobacco. The controversy, therefore, more directly concerns the particular appliances and the process which follow or come after

the feeding device. The defendants have endeavored to evade the merits of the invention by introducing into their machine various alterations and changes of form, such alterations being described in letters patent to Lawless, Nos. 779,430 and 779,431, an employé of the defendant the American Tobacco Company; but I am satisfied that such alterations and changes of form do not vary the principle of complainant's combination. The changes and modifications made by the patentee in machines of this type were not obvious, and as he was the first to make them, the claims must be given a reasonable construction and such range as will preserve to him the fruits of his discovery.

The defendants use in their factories two forms of machines, and it is fairly deducible from the evidence that they embody the combinations in suit. Omitting mention of the hopper and rollers for the delivery of the tobacco and the smoothing tongue, the so-called Jordan and Anargyros machines employ the usual endless tape, which carries the filler and wrapping paper through the filler device and thence to a smoothing device, which presses directly on the filler. One edge of the wrapper is turned down while the other is pasted, and then also turned down over the other edge. The cigarette rod in defendants' machines travels under a so-called "setting channel," and from thence under a heated iron rib, which is constructed to press directly on the moist seam, closing it, and to smooth and dry it. The distinction between the heating cap and the ironing rib is that the heating cap is molded to embrace the cigarette, and to iron it on all sides as it moves in the channel, while the ironing rib or bar of defendants' structure presses against the wrapper and seam as the cigarette rod emerges from the setting channel. Such channel is thought to perform the same function as the groove or guide in the Ludington heater cap. Both forms operate to heat or dry and smooth the cigarette rod. Moreover, there is some merit in the suggestion of Mr. Crane, expert for complainant, that the defendants' cigarette rod while in contact with the ironing rib is slightly compressed at the top of the pulley, which is used at the Anargyros factory, and which apparently supports the cigarette rod at that point. Nor is there anything in the feature of the spring pressure contained in defendants' machine to cause the court to believe that the essential elements of complainant's invention has been departed from. This was also an alteration of form injected into the machine to escape, if possible, the charge of infringement. Such changes and alterations were the equivalents for the concave smoother, fillers, and heating cap of the complainant's machine. The defendants cannot be permitted to avoid infringement by leaving out one element of the combination and substituting another, which substantially assists to attain the precise results of the claims in suit. There is, of course, no restriction on their using the old elements of the Ludington combination, but to use such elements in combination with those that are new renders them liable for appropriation. In view of the scope to which I think the claims in controversy are entitled, it is unnecessary to discuss them with more particularity, or to point out at greater length the infringing details of defendants' machines.

### The Process Patent.

It will be sufficient to set forth claim 3 of patent No. 711,987, which describes and specifies the steps of the process. It reads: "(3) The process of making and finishing a continuous cigarette rod, which consists in forming a continuous filler, securing a wrapper thereon with a pasted seam, continuously propelling the cigarette rod thus formed, and simultaneously applying heat and a smoothing pressure to the seam upon the moving cigarette, to dry and smooth the same." Claims 1 and 2 are substantially the same as claim 3, save that in the first it is stated that the pressing iron is to permanently set the cigarette rod, and in the second to permanently set the continuous filler and wrapper into desired shape. Claims 4 and 5 include the additional feature of gradually increasing the pressure on the cigarette rod. It is shown that the increasing pressure comes from the expansion of the cigarette rod after the wrapping paper has been pasted, and as the filler moves under the tapered heating cap, where it contacts with the heated surface. The essence of the invention consists of the required steps to propel the cigarette rod continuously, and to simultaneously smooth, press, and set the seam by the heat-

ing and pressing instrumentalities. By following the process the seam of the cigarette rod becomes permanent and without wrinkles therein. This was the accomplishment of a new and useful result. The law is well settled that, even though the elements of the process claim were not new, if the combination was new, and a new and useful result was produced, the patentee is entitled to the protection of his process. Cochrane v. Deener, 94 U. S. 780, 24 L. Ed. 139. Expanded Metal Co. v. Bradford, 214 U. S. 366, 29 Sup. Ct. 652, 53 L. Ed. 1034. It will be understood from what has heretofore been said in connection with the appliance patent that in complainant's preferred method a heating channel surrounds the cigarette, while the defendants use a heated rib or bar, which, in my judgment, is the equivalent of complainant's heating cap for drying and smoothing the moist seam. The claims are entitled to a construction of sufficient scope as to include as an essential step in the process the specific means adapted to simultaneously iron and press the seam. The patents to Denny and to White, upon which defendants lay stress to anticipate or limit the claims, relate to devices in a different art from that under consideration; but, even with such structures before him, I think the patentee made a step forward, and solved the problem of simultaneously heating and pressing a damp seam on the cigarette rod, as a result of which the appearance of the cigarette was improved and the seam securely sealed. While in the light of the Ludington disclosures the skilled mechanic might now be able to modify and make changes in the prior art to successfully make oval cigarettes and permanently set the seam, yet at this stage of the art it cannot be claimed that the invention is devoid of patentable invention, for the prior patents are only entitled to consideration for what they actually made known to the public. Badische Anilin & Soda Fabrik v. Kalle & Co. 104 Fed. 802, 44 C. C. A. 201. In view of the construction herein given the claims, no question of infringement arises.

In my judgment Ludington made a substantial mechanical improvement in the continuous cigarette making art, and, his patent for achieving the result being valid, it follows that the complainant is entitled to a decree, with costs, as prayed for in the bill.

Appeal from a decree of the Circuit Court, Southern District of New York, in favor of the complainant in a suit to restrain the alleged infringement of two patents. The first patent (the machine patent) is No. 711,986, and was granted on October 28, 1902, to Frank J. Ludington, assignor of the complainant, for an improvement in Cigarette forming, wrapping, and ironing appliances. The second patent (the process patent) is No. 711,987, and was granted upon the same day to the same inventor for an improvement in the process of making cigarettes from continuous cigarette rods. Claims 1, 2, 3, 12, 13, 18, 19, 21, and 22 of the machine patent (No. 711,986) were in suit, and were held by the Circuit Court to be valid and infringed. All of the claims of the process patent (No. 711,987) were in issue, and were likewise held valid and infringed. Claim 1 is the broadest claim in the machine patent. All the other claims contain elements not to be found in that claim. In respect of the defendants' process, claim 3 is the broadest claim in the process patent. Claims 4 and 5 of that patent require an additional step, and claims 1 and 2 specify a different purpose.

J. Q. Rice, for appellants.
D. W. Brown, for appellee.

Before LACOMBE, WARD, and NOYES, Circuit Judges.

PER CURIAM. The opinion of Judge Hazel is especially directed toward the validity and infringement of the broadest claims of the two patents, viz., claim 1 of the machine patent and claim 3 of the process patent, and, upon that opinion we affirm the decree appealed from so far as it relates to such claims. Upon careful consideration, however, we are not entirely satisfied that the defendants infringe the other claims in issue, and consequently the scope of the decree must be curtailed.

The decree of the Circuit Court is modified by limiting its application to claim 1 of patent No. 711,986 and to claim 3 of patent No. 711,987, and as so modified is affirmed, with costs.